588 So.2d 778 (1991)
STATE of Louisiana
v.
Michael PHILIPPOFF and Ava M. Somme, a/k/a Ava Bernard.
No. 90-KA-2110.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1991.
Harry F. Connick, Dist. Atty., Martin Melton, Asst. Dist. Atty., New Orleans, for State.
Frederick J. King, Jr., New Orleans, for defendants/appellants.
Before KLEES, BYRNES, and PLOTKIN, JJ.
*779 PLOTKIN, Judge.
Defendants-appellants Michael Philippoff and Ava M. Somme appeal the trial court's denial of their motions to suppress evidence. After reviewing the record and considering their claims, we affirm.
On January 3, 1990, defendants-appellants were each charged with possession with the intent to distribute marijuana. After having plead not guilty twice previously, both plead guilty on July 26, 1990 under State v. Crosby, 338 So.2d 584 (La. 1976). Philippoff plead guilty as charged, while Somme pled guilty to the reduced charge of simple possession of marijuana. Both defendants reserved their right to appeal adverse rulings on motions to suppress the evidence.
FACTS:
On November 16, 1989, U.S. Postal Inspectors at the Main Post Office facility in New Orleans, Louisiana intercepted an Express Mail Parcel addressed to Dave Hammond, C/O Mischa Philippoff, 638 Race Street, New Orleans, Louisiana 70130, bearing a return address of M & S Art Supply, 78 Clinton Street, New York City, New York 10002. The Postal Inspectors obtained a warrant to search the package. The affidavit for the warrant indicated that this package "fit the profile of an ongoing Inspection Service Express Mail Narcotics investigation, which includes fictitious return addresses." The affidavit stated that approximately an hour after learning that the package had been received at the Main Post Office, an investigating inspector had been advised by the post office in New York that the return address of "M & S Art Supply, 7 Clinton Street, New York City, NY 10002" was fictitious. However, the actual numerical return address written on the package was 78 Clinton Street. The package had been placed with several other packages, and two certified narcotics detection dogs had separately "alerted" on the package.
The inspectors obtained a warrant for a search of the package, opened it, and discovered about one pound of marijuana. Since there was only a small amount of marijuana, the federal officers contacted the New Orleans Police Department and asked if they would like to pursue the matter. This offer was accepted by the N.O.P.D. Narcotics Division. The inspectors subsequently taped up the box and made a controlled delivery of the package to 638 Race Street.
Prior to delivery of the package to the Race Street address, the New Orleans Police officers obtained a warrant to search the residence. Upon delivery, defendant Michael Philippoff answered the door and signed for the package. After waiting approximately ten minutes, the officers executed the search warrant of the residence and discovered the open package containing the marijuana. The defendants, Michael Philippoff and Ava Somme were inside the house at the time the discovery was made. Three additional people were located inside the residence upon execution of the warrant; however, two were carpenters and the other was an acquaintance. None of the additional parties were arrested.
Defendants herein, charged with Possession of Marijuana with Intent to Distribute, filed a Motion to Suppress the Evidence, on which the Court held a hearing on March 23, 1990. At the first suppression hearing, Postal Inspector Gerard Kay testified that in the spring of 1989 while glancing through a printout of labels from express mail deliveries, he noticed two entries addressed to Mischa Philippoff at 638 Race Street from a John Kadell in New York. He testified that his attention was drawn to these entries because the street address for Kadell, on West 14th Street, differed by a few numbers on each package, even though the packages had been sent within a short time period. He testified that he checked both addresses and found that Kadell did not reside at either address. A few weeks later, he noticed the label of a package addressed to Dave Hammond in care of Mischa Philippoff at 638 Race Street, from Mark Delaseda at an address on West 14th Street in New York. He testified that the handwriting on the label was similar to that on the two earlier packages from Kadell. Inspector Kay further testified that he failed to take any action until November *780 11th when he was again reviewing the printouts and noticed the addresses on the package in question.
Inspector Kay notified the postal supervisor for the route in which 638 Race Street was located and asked if there were any express packages for that address. Upon learning that there was one at the Main Post Office, he went there and found the package from the M & S Art Supply at 78 Clinton Street. Inspector Kay testified that upon contacting a New York Post Office to verify the address he was quickly notified that the address was false. It was at this time that the package was taken to an area and placed with other packages where the narcotics detection dogs "alerted" on the package. Subsequently, the first search warrant was obtained and the package was opened, exposing the marijuana.
At the second suppression hearing on June 15, 1990, Mr. Arthur Pearly a witness for the defense testified that he went to 78 Clinton Street and photographed the disputed address. He further testified that the address housed two businesses and he obtained a business card from one of them. In addition, the defense counsel sent a certified letter to "Occupant" at 78 Clinton Street which was returned as addressee unknown, as well as certified letters to the clothing store and the delicatessen located at this address; both of those letters were delivered.
It was at this same suppression hearing that Inspector Kay stated that he did not testify at the prior hearing that 78 Clinton did not exist, but rather that the return address of M & S Art Supply at 78 Clinton was unknown to the Postal Service and therefore was considered a fictitious return address. He testified that although there was a four- or five-story building at 78 Clinton Street, the only businesses at that address where the clothing store and the delicatessen on the first floor. He testified that he also checked with the current and the previous carrier for that postal route and neither one knew of an art supply store at that address.
ERRORS PATENT:
A review of the record for errors patent reveals none.
ASSIGNMENTS OF ERROR
Defendants assert two assignments of error, both relating to the motions to suppress the evidence. They will be discussed in conjunction with one another.
First, the appellants suggest that the Postal Inspector checked the wrong address in New York, which resulted in an unwarranted suspicion of the package which eventually led the postal authorities to subject the package to the narcotics detection dogs. The second issue involves the validity of the warrant. They suggest that the Postal Inspectors either knew that the address was valid or at least acted in reckless disregard of the truth, thus misrepresenting facts to the Court, which were sufficient to invalidate the warrant.
ISSUANCE OF THE INITIAL SEARCH WARRANT
Defendants argue that the initial search warrant allowing the Postal Inspectors to open the package should not have been issued because the warrant application failed to set forth a basis showing sufficient suspicion of the package to subject it to the narcotics detection dogs. They further argue that had the package never been subjected to the dogs, the dogs could not have "alerted" on the package and therefore the affidavit for the warrant would not have set forth probable cause. Appellants cite United States v. Beale, 674 F.2d 1327 (9th Cir.1982), in support of their argument. In Beale, airport police in Florida became suspicious of the defendant as he purchased his ticket and waited for his flight to California. The officers questioned the defendant but allowed him to leave. However, prior to placing his checked luggage on the plane, it and other luggage was screened by a detection dog which "alerted" on the defendant's luggage. Upon arrival in California, his luggage was subjected to another dog sniff search which had the same result. The California police then obtained a warrant and searched the luggage, finding drugs. On appeal of his conviction, the defendant *781 argued that the seizure of his luggage and the use of the detection dogs were illegal. The court remanded the case to the trial court for a determination of whether the Florida police had "articulable suspicion" of the defendant prior to their use of the detection dog.
However, in United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the United States Supreme Court held that subjecting an object to a detection dog search was not a "search" within the meaning of the Fourth Amendment. The Court also noted:
A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.
Defendants acknowledge Place but contend that in Place, the officers had reasonable suspicion of the luggage ultimately sniffed prior to subjecting the luggage to the dogs. The United States Supreme Court vacated and remanded United States v. Beale, to the Ninth Circuit for further consideration in light of Place. See United States v. Beale, 463 U.S. 1202, 103 S.Ct. 3529, 77 L.Ed.2d 1382 (1983). On remand, 736 F.2d 1289 (9th Cir.1984), cert. den. Beale v. United States, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), the Ninth Circuit reversed its previous holding and found that the officers did not need articulable suspicion to use detection dogs. Further, in United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), the Court stated that its opinion in Place held that dog sniff searches are not a violation of the Fourth Amendment. Given the Court's language in Jacobsen, the inspectors did not have to show articulable suspicion in order to use the narcotics detection dogs.
Thus, this claim has no merit.
INVALIDATED SEARCH WARRANT
Defendants contend that the initial search warrant granting the Postal Inspectors the right to open the package was not valid. The appellants make this claim arguing that the search warrant should never have been issued based on false information contained in the affidavit which misrepresented the facts to the magistrate. Appellants argue that the Postal Inspector checked the wrong address, therefore incorrectly misleading the magistrate to believe that the address was false, when in fact 78 Clinton Street was a valid mailing address. Appellants aver that this should have invalidated the warrant.
However, it is more likely that the reference to 7 Clinton Street was a typographical error. This interpretation is bolstered by Inspector Kay's testimony at the first suppression hearing that he checked with postal authorities to determine if the return address on the package was valid, and at the second hearing that he checked 78 Clinton Street. Thus, the trial court did not err by finding that the reference to 7 Clinton Street was merely a typographical error.
It should also be noted that there was no allegation by Inspector Kay that 78 Clinton Street did not exist. The affidavit stated that the package bearing the return address of M & S Art Supply, 78 Clinton Street, New York, New York 10002, "fit the profile of an ongoing Inspection Service Express Mail Narcotics investigation which includes fictitious return addresses." At the second suppression hearing, Inspector Kay testified that although 78 Clinton Street was a valid address, M & S Art Supply at 78 Clinton Street was unknown to the Postal Service and therefore was a fictitious return address.
*782 It is unquestionable that 78 Clinton Street exists as a valid address. However, the return address on the package of M & S Art Supply, 78 Clinton Street does not exist. There is no M & S Art Supply at 78 Clinton Street and therefore no possibility of returning a package there. Thus, the return address on the package, which included the name of the company supposedly operating at that address, was not valid. Therefore, the allegation in the affidavit that the package had a fictitious return address was not false or misleading.
Thus, this claim has no merit.
CONCLUSION
For the above and foregoing reasons, we find that the trial court did not err in denying both motions to suppress the evidence. Thus, the convictions and sentences are affirmed.
AFFIRMED.